# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ERIC LOUIS HART
     Plaintiff

v.

ANDREW SAUL,
Acting Commissioner of
Social Security Administration,

     Defendant

Case No.: 3:19-cv-00138-WGC

**Order**

Re: ECF Nos. 17, 18

Before the court is Plaintiff's Motion for Reversal and/or Remand. (ECF No. 17.) The Commissioner filed a Cross-Motion to Affirm and Opposition to Plaintiff's Motion for Reversal. (ECF Nos.18. 19.)

For the reasons set forth below, Plaintiff's motion is denied, and the Commissioner's cross-motion to affirm is granted.

## I. BACKGROUND

On April 21, 2014, Plaintiff completed applications for disability insurance benefits (DIB) under Title II of the Social Security Act alleging disability beginning January 11, 2014. (Administrative Record (AR) 220-221.) The applications were denied initially and on reconsideration. (AR 110-113, 114-119.)

Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 121-122.) ALJ Craig Denney held a hearing on January 10, 2018. (AR 38-6.) Plaintiff, who was represented by counsel, appeared and testified on his own behalf at the hearing. Testimony was also taken from a vocational expert (VE). On March 12, 2018, the ALJ issued a decision finding

Plaintiff not disabled. (AR 12-25.) Plaintiff requested review, and the Appeals Council denied

the request, making the ALJ's decision the final decision of the Commissioner. (AR 1-8.)

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g).

Plaintiff argues that the ALJ did not properly reject Plaintiff's testimony concerning his pain,

symptoms and level of limitation. The Commissioner, on the other hand, argues that the ALJ

properly evaluated Plaintiff's subjective complaints.

## II. STANDARDS

**A. Disability Process**

"The Social Security Administration (SSA) provides benefits to individuals who cannot

obtain work because of a physical or mental disability." *Biestek v. Berryhill,* 139 S.Ct. 1148,

1151-52 (2019). A claimant may apply for disability insurance benefits (DIB) under Title II of

the Social Security Act, and/or supplemental security income (SSI) benefits under Title XVI of

the Act. SSI benefits are based on need, and to be eligible a claimant must be "aged, blind or

disabled" and have income and resources under certain thresholds. 42 U.S.C. § 1382(a). DIB are

based on earnings, and the claimant must be disabled and have contributed to the insurance trust

fund through deductions in wages. 42 U.S.C. § 401(b). DIB, unlike SSI, are limited to a certain

period of insurance determined by the amount of the claimant's previously taxed earnings. 42

U.S.C. § 423(c)(1). Title 20 of the Code of Federal Regulations contains SSA's regulations.

Those that start with 404 are Title II regulations. Those that start with 416 are Title XVI

regulations.

After a claimant files an application for disability benefits, a disability examiner at the

state Disability Determination agency, working with a doctor(s), makes the initial decision on the

claimant's application. *See* 20 C.F.R. §§ 404.900(a)(1); 416.1400(a)(1). If the agency denies the

claim initially, the claimant may request reconsideration of the denial, and the case is sent to a different disability examiner for a new decision. *See* 20 C.F.R. §§ 404.900(a)(2), 416.1400(a)(2). If the agency denies the claim on reconsideration, the claimant may request a hearing and the case is sent to an ALJ who works for the Social Security Administration. *See* 20 C.F.R. §§ 404.900(a)(3), 416.1400(a)(3). The ALJ issues a written decision after the hearing. *See* 20 C.F.R. § 404.900(a)(3). If the ALJ denies the claim, the claimant may request review by the Appeals Council. *See* 20 C.F.R. §§ 404.900(a)(4), 416.1400(a)(4). If the Appeals Council determines there is merit to the claim, it generally remands the case to the ALJ for a new hearing. If the Appeals Council denies review, the claimant can file an action in the United States District Court. *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5).

**B. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or her physical or mental impairment(s) are so severe as to preclude the claimant from doing not only his or her previous work but also, any other work which exists in the national economy, considering his age, education and work experience. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  20 C.F.R. §404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is

denied. 20 C.F.R. § 404.152(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant has an impairment(s) that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment(s) meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(a).

1       In making this determination, the Commissioner assesses the claimant's residual

2 functional capacity (RFC) and the physical and mental demands of the work previously

3 performed. *See id.;* 20 C.F.R. § 404.1520(a)(4)(v), § 416.920(a)(4)(v); *see also Berry v. Astrue*,

4 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her

5 limitations. 20 C.F.R. § 404.1545 and § 416.945. In determining the RFC, the Commissioner

6 must assess all evidence, including the claimant's and others' descriptions of the limitation(s),

7 and medical reports, to determine what capacity the claimant has for work despite his or her

8 impairments. 20 C.F.R. § 404.1545(a)(3) and  416.945(a)(3).

9       A claimant can return to previous work if he or she can perform the work as he or she

10 actually performed it, *i.e.*, if he or she can perform the "actual functional demands and job duties

11 of a particular past relevant job," or as generally performed, *i.e.*, "[t]he functional demands and

12 job duties of the [past] occupation as generally required by employers throughout the national

13 economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and

14 citation omitted). If the claimant can still do past relevant work, then he or she is not disabled. 20

15 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131.

16       If, however, the claimant cannot perform past relevant work, the burden shifts to the

17 Commissioner to establish at step five that the claimant can perform other work available in the

18 national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Yuckert*, 482 U.S. at 141-42,

19 144. This means "work which exists in significant numbers either in the region where such

20 individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*,

21 740 F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC,

22 age, education, and past work experience to determine whether the claimant can do other work.

23 *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the

1  testimony of a VE or by reference to the Grids[1]. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir.

2  1999).

3        If at step five the Commissioner establishes that the claimant can do other work which

4  exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566(b),

5  § 416.966(b). Conversely, if the Commissioner determines the claimant unable to adjust to any

6  other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g), § 416.920(g); *see also*

7  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Valentine v.*

8  *Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

9  **C. Judicial Review & Substantial Evidence**

10        The court must affirm the ALJ's determination if it is based on proper legal standards and

11  the findings are supported by substantial evidence in the record. *Gutierrez*, 740 F.3d at 522

12  (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a

13  preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

14  support a conclusion." *Id.* at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir.

15  2012)).

16        To determine whether substantial evidence exists, the court must look at the record as a

17  whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*,

18  740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may

19  not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*,

20  759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th

21  _____

22  [1] "The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific

23  combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted).

Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.* (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff met the insured status requirements through December 31, 2019, and had not engaged in substantial gainful activity since the alleged onset date. (AR 17.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: degenerative disc disease, status post left shoulder arthroscopy, right shoulder anterior labral tear, bilateral metatarsus adductus, post-traumatic stress disorder (PTSD), and depressive disorder with anxiety. (AR 24.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR18-19.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform light work, except that he can: frequently climb stairs or ramps; never climb ladders or scaffolds; occasionally balance and stoop; frequently kneel and crouch; never crawl; occasionally reach above the shoulder level with right upper extremity; occasionally push or pull with the right arm; avoid concentrated exposure to moving mechanical parts and unprotected heights; he is able to understand, remember and carry out simple, routine, and detailed tasks, but not complex tasks or instructions; he can occasionally interact with supervisors and coworkers, but should never interact with the general public. (AR 20.)

The ALJ then concluded Plaintiff was unable to perform any past relevant work. (AR 24.)

At step five, the ALJ determined, based on VE testimony, that considering Plaintiff's age, education, work experience and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including: mail clerk, marker, and garment sorter. (AR 24-25.) As a result, the ALJ found Plaintiff not disabled from  through the date of the decision. (AR 25.)

**B. Plaintiff's Subjective Symptom and Limitation Testimony**

**1. Standard**

"[A] claimant's credibility becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001) (citing SSR 96-7P)). Thus, a claimant's credibility is often crucial to a finding of disability. The ALJ is responsible for determining credibility, but those findings must be supported by substantial evidence. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

There is a two-step test for determining the extent to which a claimant's symptom testimony must be credited:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison*, 759 F.3d at 1014-15 (internal quotation marks and citations omitted, emphasis original).

**2. Plaintiff's Testimony**

Plaintiff testified that he sometimes has issues with road rage while driving. (AR 39-40.) He had problems with people at work, and it was common for him to put his hands on them, and that is why he quit his job. Since then, he had two physical altercations in supermarkets. (AR 40-41.)

He is able to get up and shower. (AR 44.) He occasionally does dishes and odd tasks around the home, but nothing that really requires lifting, as his two sons can do any required lifting. (AR 46.) He has no problem watching television. (AR 52.) He only does grocery shopping with his spouse early in the morning to try and avoid running into people. (AR 46.) He does not socialize with anyone other than his wife, son and daughter. (AR 47.)

He can walk or hike for a mile or two. (AR 46.) He testified he can stand for about five to ten minutes before his lower back starts to hurt. (AR 48.) Sitting does not bother him much. (AR 48.) He can lift five to ten pounds on a regular basis. (AR 48.) He can go up and down steps.

(AR 48.) He could raise his right arm to shoulder level and above, but it would hurt because he had torn cartilage and the muscles around his ribs the last time he had a cold. (AR 48-49.) He could raise his left arm to shoulder level. (AR 49.)

He testified that he was able to work around his physical limitations to do jobs, but his mental issues had gotten to the point that he was violent toward people who talk down to him or get in his face. He said, "this last time I have had people get in my face (in the workplace), I [ ] choked a few people out." (AR 49-50.) He relayed an experience where a 15 or 16 year old walked in front of him and his wife at the store, and did not say excuse me, and Plaintiff grabbed him by his shoulders and his wife had to stop him from doing anything further. (AR 50.) He recounted that on one occasion at a previous job, he hit his head on a piece of machinery, and ended up breaking the machinery in anger. (AR 52.)

At the time of the hearing he was taking Paroxetine, Methocarbamol, Lithium Carbonate, Lamtidine, Hydrocodone, Simvastatin, and Metopirone. (AR 44.) His medications help keep his anger at bay, but his doctor told him that some of them he has maxed out on as far as how much they can give him. He had not had many side effects from the medications. He did not want to change medications, for fear it would make things worse. To keep the problems from occurring, he tries to seclude himself at his house. (AR 51.)

**3. Analysis**

Plaintiff argues that the ALJ failed to explain how Plaintiff's testimony concerning his physical limitations is inconsistent with the objective medical evidence.

1    The ALJ stated that Plaintiff's alleged symptoms include back and shoulder pain, bilateral

2  foot pain, difficulty with lifting, reaching and walking, and mental symptoms of irritability,

3  aggression, and difficulty concentration. (AR 20.)

4    The ALJ found that Plaintiff's medically determinable impairments could reasonably be

5  expected to cause the alleged symptoms; however, the ALJ determined that Plaintiff's statements

6  concerning the intensity, persistence and limiting effects of the symptoms were not entirely

7  consistent with the medical and other evidence in the record. (AR 21.)

8    **a. Physical Impairments**

9    The court will first determine whether the ALJ set forth specific, clear and convincing

10  reasons for discrediting Plaintiff's testimony regarding his physical impairments.

11    Regarding Plaintiff's back impairment, the ALJ recounted that Plaintiff was diagnosed

12  with degenerative disc disease of the thoracolumbar spine, with imaging showing mild

13  rotoscoliosis with degenerative change, minimal wedging of L2, and moderate degenerative disc

14  disease at L5-S1. The ALJ noted that clinical examinations showed tenderness to palpation and

15  occasional abnormal gait, but generally had normal range of motion, strength, tone, and reflex

16  findings. Associated treatment generally consisted of pain medications. (AR 21.)

17    With respect to the shoulder impairment, the ALJ indicated that Plaintiff was diagnosed

18  with status post left shoulder arthroscopy with decompression and labral debridement and right

19  shoulder anterior labral tear. He had left shoulder surgery in December 2016, and right shoulder

20  surgery in 2017. The ALJ noted that post-surgical clinical findings demonstrated continued

21  improvement. In February 2017, he was described as having excellent range of motion, and

22  increased strength in the left shoulder.

23

Regarding the bilateral foot impairment, Plaintiff was diagnosed with bilateral metatarsus adductus, but imaging findings showed no gross bony abnormality, no fracture or significant degenerative changes. Clinical examination findings demonstrated some tenderness through midfoot joints, but strength and range of motion findings were within normal limits. Treatment included left distal metatarsal osteotomies and left capsulotomy, metatarsophalangeal joint and soft tissue release, injections, pain medications and orthotic shoe inserts. The ALJ pointed out that notes from August 2016 indicated noticeable improvement when wearing orthotics, and that he had no pain with walking a lot. (AR 21-22.)

The ALJ then noted that Plaintiff reported limited activities, including difficulty walking, lifting more than 5-10 pounds, and sitting or standing for extended periods of time. The ALJ found, however, that the objective evidence, including generally good range of motion, strength, tone, and gait findings, along with post-surgical conservative care were not consistent with the allegations of symptoms and limited activities. The ALJ did state, though, to reconcile the evidence with Plaintiff's persistent pain complaints and ongoing treatment including opioid pain medication management, that Plaintiff was limited to light exertion with additional postural and environmental limitations. (AR 22.)

The ALJ also discussed the findings of State agency consultants, Mindy Lokshin, M.D., and Robert Mitgang, M.D., who agreed Plaintiff was limited to light work. The ALJ assessed Plaintiff as needing additional limitations than these physicians opined, given his pain complaints, ongoing orthotic use, and intermittent gait findings. (AR 22.)

The court finds that the ALJ did in fact set forth specific, clear and convincing reasons supported by the evidence for discrediting Plaintiff's subjective symptom testimony relative to his physical impairments. The ALJ specifically discussed Plaintiff's testimony that he was

limited physically, but cited the objective evidence, including good range of motion, strength and tone and gait findings, along with post-surgical conservative care and demonstrated improvement as being inconsistent with Plaintiff's testimony concerning the extent of his limitations. The ALJ also considered the reviewing physicians' opinions, and determined they did not adequately account for all of Plaintiff's limitations, and the ALJ adjusted Plaintiff's RFC accordingly.

**b. Mental Impairments**

The court will now determine whether the ALJ set forth specific, clear and convincing reasons for discrediting Plaintiff's testimony concerning his mental impairments.

Plaintiff argues that he took himself away from situations that trigger his symptoms, by moving to an isolated town. He asserts that despite treatment and medication, he continued to demonstrate problems being around others. He acknowledges some improvement with his medication and current lifestyle, but contends this does not reflect the overall picture of his mental wellbeing. Plaintiff further argues that the fact that he is taking Lithium indicates he is not undergoing a conservative course of treatment. Finally, Plaintiff contends that the ALJ erred to the extent he rejected Plaintiff's allegations when he gave some weight to the non-examining, reviewing State agency physicians. He cites the fact that Dr. Evans reviewed the file and suggested that current treatment notes or a psychological consultative examination were needed to address Plaintiff's functional issues, and Dr. Caruso-Radin reviewed the file six months later and no consultative examination was performed.

The ALJ noted Plaintiff's diagnoses of PTSD, depression and anxiety. The ALJ indicated that mental status examination findings had some variances in mood findings, but generally, his mood and affect were reported as euthymic. Occasionally, he was irritated or depressed with congruent affect. The ALJ pointed out that Plaintiff was consistently noted as well-groomed,

cooperative and pleasant with good eye contact, and his thought process findings were within normal limits with no psychomotor agitation. He had undergone therapy sessions and was prescribed mood stabilizing medications, particularly antidepressants and antianxiety medications. The ALJ then stated that Plaintiff reported that his "explosive outbursts" were significantly reduced with Lithium, which also helped his memory.

The ALJ then turned to Plaintiff's report of limited activities, including acute irritability, poor sleep, nightmares and difficulty with memory and concentration. The ALJ found that the objective findings, that include generally benign mood and mental status findings, consistent conservative treatment, and good response to medications, did not support Plaintiff's allegations of disabling mental symptoms. The ALJ did state, however, that to reconcile this with his self-reported displays of aggression and consistently noted irritability, the RFC was limited to occasional interaction with supervisors and coworkers and to no contact with the general public. Given his anxiety and consistently reported physical pain symptoms, the ALJ found that a limitation to simple, routine work was appropriate. (AR 22.)

The ALJ also discussed the findings of H. Mark Evans, Ph.D., and Phaedra Caruso-Radin, Psy.D., who opined that Plaintiff had mental limitations, including that he was limited to no public contact. The ALJ found that their opinions did not adequately account for Plaintiff's consistently reported irritability and aggression, which the ALJ found supported an additional limitation of occasional contact with supervisors and coworkers. He also concluded they did not appropriately consider Plaintiff's anxiety and pain, which the ALJ accounted for with the limitation to simple, routine tasks. (AR 29.)

The ALJ then discussed that the mental health clinicians provided Global Assessment of Functioning (GAF) scores ranging from 55 to 70, which indicated mild-to-moderate difficulty in

14

social, occupational or school functioning. The ALJ found this was generally consistent with his noted irritability and reported outbursts.

The ALJ commented on the opinions of Department of Veteran's Affairs (VA) psychologist, Eric S. Diddy, Ph.D., who opined Plaintiff was limited in his ability to establish and maintain work relationships, would have difficulty executing work related tasks in a timely and efficient manner, and would experience poor interactions with coworkers. The ALJ concluded that while Dr. Diddy attempted to address social and cognitive limitations, the opinion was vague and non-specific, and was given little weight.

Finally, the ALJ noted the VA disability ratings of 70% for PTSD, 20% for limited motion of the arm, 10% for tuberculosis of the testis, and 0% for lumbosacral or cervical strain. The ALJ gave the opinion partial weight given the medical evidence, including imaging, diagnostics, physical findings, and continued treatment for the impairments.

The court finds that the ALJ also set forth specific, clear and convincing reasons supported by the record for discrediting Plaintiff's testimony concerning the extent of his mental limitations. It should be noted that the ALJ did not discredit Plaintiff's testimony in full. He accepted Plaintiff's assertions that he had anger issues that sometimes resulted in violence, but the ALJ weighed this against Plaintiff's testimony that his symptoms had greatly improved with the Lithium prescription and accounted for his testimony with further RFC limitations limiting his contact with supervisors and co-workers and precluding contact with the general public.

Plaintiff contends that the ALJ's recognition that Plaintiff was taking Lithium contradicts his finding that Plaintiff was undergoing a conservative course of treatment for his mental limitations. The ALJ found that the objective findings, that include generally benign mood and mental status findings, consistent conservative treatment, and good response to medications, did

not support Plaintiff's allegations of disabling mental symptoms. This statement could be interpreted as meaning that plaintiff had generally undergone a conservative course of treatment, *i.e.*, no inpatient treatment or hospitalization, *and* that he responded well to his medications. Plaintiff's own testimony supports that he did well with his medications, that they improved his symptoms, and did not experience side effects. "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

Finally, the Commissioner is correct that the ALJ did not rely on the State agency reviewing psychological consultants' opinions as a basis for discrediting Plaintiff's subjective symptom testimony. Instead, the ALJ recounted their opinions and determined that they did not fully encompass Plaintiff's subjective testimony. Plaintiff's only argument is that the ALJ erred in not setting forth sufficient reasons for rejecting his subjective statements about his symptoms and limitations. He does not argue that the ALJ erred in failing to fully develop the record in not ordering a psychiatric consultative examination; therefore, the court will not undertake an analysis as to whether the ALJ should have required further development of the record.

In sum, the court finds that the ALJ set forth specific, clear and convincing reasons for discrediting some of Plaintiff's testimony concerning the extent of his mental limitations.

## **IV. CONCLUSION**

IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and/or Remand (ECF No. 17) is **DENIED**, and the Commissioner's Cross-Motion to Affirm (ECF No. 18) is **GRANTED**. The Clerk shall enter judgment accordingly.

Dated: July 14, 2020

William G. Cobb
United States Magistrate Judge

17